UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 8:22-cv-00941-RGK-KES | Date | September 5, 2024 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. TKO Farms, Inc. et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: The SEC's Motion for Summary Judgment [DE 122], the Estate of Gilbert Allan Penhollow's Motion for Summary Judgment [DE 126], and the SEC's Motion to Amend Complaint [DE 131]

## I. INTRODUCTION

On May 6, 2022, the Securities and Exchange Commission (the "SEC") filed a Complaint against TKO Farms Inc. ("TKO Farms"); Agraviate Inc. ("Agraviate"); Kenneth Dewayne Owen; Reynaldo Aguilar, Jr.; Ross Gregory Erskine; and the Estate of Gilbert Allan Penhollow (the "Estate") (collectively, "Defendants").[1] (ECF No. 1.) The SEC asserts various claims for violations of the Securities Act and Exchange Act.

Presently before the Court are the SEC's Motion for Summary Judgment (ECF No. 122), the Estate's Motion for Summary Judgment (ECF No. 126), and the SEC's Motion to Amend Complaint (ECF No. 131). For the following reasons, the Court **GRANTS** the SEC's Motion for Summary Judgment, **DENIES** the Estate's Motion for Summary Judgment, and **DENIES** the SEC's Motion to Amend Complaint **as moot**.

## II. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted:

TKO Farms owns and operates an exotic hardwood and citrus tree farm in Belize. (TKO Farms, Agravitae, and Owen's Answer (hereinafter, "Owen's Answer") ¶ 9.) Agravitae develops and markets products utilizing the hardwoods and citrus from TKO Farms. (*Id.* ¶ 10.) Though both businesses

---

[1] The Complaint also names James Brian Blaylock as a defendant. However, Blaylock is in default, thus the Court need not address the claims against him. Additionally, the Complaint also names Freelife Logistics LLC, Personal Group, LLC, Signature One Capital Inc., and Storber, LLC as relief defendants. These entities are controlled by Blaylock, Erskine, and Aguilar and allegedly received the proceeds from their violations of the Securities Act and Exchange Act. As relief defendants, no claim is asserted directly against them, thus the Court need not address them either.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00941-RGK-KES | Date | September 5, 2024 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. TKO Farms, Inc. et al.* | | |

nominally have various officers and directors, they are actually controlled by their majority stakeholder, Owen. (Flake Decl., Ex. 5 at 22:3–22:17; Flake Decl., Ex. 15, ECF No. 122-23; Flake Decl., Ex. 19, ECF No. 122-28.)

### A. Misleading Marketing Materials

Between 2017 and 2021, TKO Farms and Agravitae offered securities to prospective investors. (Owen's Answer ¶ 20.) These securities were not registered with the SEC. (*Id.* ¶ 25.) To promote the securities, Owen produced various marketing materials. These marketing materials contained multiple material omissions and misstatements. For instance, the materials:

- concealed the extent of Owen's control over the business, portraying him as merely the Vice President of Sales, (Flake Decl., Ex. 12 at 175–76, ECF No. 122-20);

- concealed the fact that Owen was previously convicted of felony securities fraud, (*Id.*; Owen's Answer ¶ 1);

- misrepresented that the business would use broker-dealers in compliance with SEC regulations, (Flake Decl., Ex. 13 at 286, ECF No. 122-21); and

- misrepresented that investor funds would be used for various business purposes, when instead, they were used to pay restitution for Owen's previous felony conviction, (*Id.*; Salimi Decl. ¶ 7(a), ECF No. 122-42).

### B. The Promoter Defendants

Owen also engaged Aguilar, Erskine, and Penhollow (collectively, the "Promoter Defendants") to solicit prospective investors. (Owen's Answer ¶ 11.) The Promoter Defendants solicited investors by cold calling them via telephone and providing marketing materials over email. (Flake Decl., Ex. 3 at 37:18–20, ECF No. 122-6.) None of the Promoter Defendants were registered to act as brokers in compliance with SEC regulations. (Flake Decl., Ex. 3 at 16:5–8; Flake Decl., Ex. 4 at 14:19–15:15, ECF No. 122-7; Flake Decl., Ex. 11 at 8:20–22, ECF No. 122-14.)

Owen instructed the Promoter Defendants to offer the securities only to prospective investors that were accredited under the Securities Act. (Aguilar Decl. ¶ 6, ECF No. 134-2.) To facilitate this, Owen provided the Promoter Defendants with "lead sheets" that contained information about prospective investors that had already been identified as accredited investors. (*Id.*; Flake Decl., Ex. 3 at 37:6–38:21.) As part of their sales pitch, the Promoter Defendants asked the prospective investors to confirm that they qualified as accredited investors. (Flake Decl., Ex. 4 at 34:21–36:3.) They did not ask for any documentation or other corroboration of their accreditation. (*Id.*) Instead, if the prospective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00941-RGK-KES | Date | September 5, 2024 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. TKO Farms, Inc. et al.* | | |

investors were interested in proceeding, the Promoter Defendants simply required them to fill out a form confirming that they were accredited. (*Id.*)

When pitching the securities, the Promoter Defendants also gave valuations and advice to the prospective investors. For instance, Aguilar recommended and advised prospective investors to invest in TKO Farms and Agravitae. (Flake Decl., Ex. 33 at 73:3–14, ECF No. 144-4.) Similarly, Erskine walked investors through financial projections and potential returns on investment. (Flake Decl., Ex. 35 at 122:14–124:13, ECF No. 144-6.) They also participated in negotiations. For example, Aguilar set up and attended an in-person meeting between Owen and a prospective investor. (Flake Decl., Ex. 34 at 97:14–98:21, ECF No. 144-5.) Similarly, Erskine acted as a liaison between Owen and investors. (Flake Decl., Ex. 36 at 123:24–124:13.)

There is some dispute over how the Promoter Defendants were compensated. According to Owen, the Promoter Defendants were paid commissions ranging from 15 to 40%. (Owen's Answer ¶ 54.) According to Aguilar, these commissions varied by role. As an "opener," Aguilar received 5% commissions on top of a $300 weekly salary. (Williams Decl., Ex. 1 at 20:1–18, ECF No. 134-3; Flake Decl., Ex. 34 at 78:3–17.) But when he became a "closer," he was exclusively paid commissions. (Flake Decl., Ex. 34 at 78:3–17.) According to Erskine, he did not receive commissions, but instead received "discretionary bonuses" based on TKO Farms and Agravitae's success. (Erskine Decl. ¶¶ 15–16, ECF No. 132-2.) However, Erskine admitted that he had no knowledge of how the discretionary bonuses were calculated, and that the calculations were handled by Owen. (Flake Decl., Ex. 35 at 72:4–20.)

On July 26, 2021, before the SEC filed this lawsuit, Penhollow passed away. (Flake Decl. ISO Mot. for Leave to Amend (hereinafter, "Second Flake Decl."), Ex. 1, ECF No. 131-4.) Penhollow's brother, Steven Penhollow, filed a petition for probate and was appointed as the Estate's personal representative. (Second Flake Decl., Ex. 3, ECF No. 131-6.)

### III. JUDICIAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56(a), a court may grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on a summary judgment motion, the movant must show that there are no genuine disputes of material fact as to matters on which it has the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Upon such a showing, the Court may grant summary judgment on all or part of the cause of action. Fed. R. Civ. P. 56(a).

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. *See Celotex*, 477 U.S. at 324. Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 96–97 (9th Cir. 1983). The non-moving party must affirmatively present specific evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00941-RGK-KES | Date | September 5, 2024 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. TKO Farms, Inc. et al.* | | |

sufficient to create a genuine dispute of material fact for trial. *See Celotex*, 477 U.S. at 324. The materiality of a fact is determined by whether it might influence the outcome of the case based on the contours of the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over such facts amount to genuine disputes if a reasonable jury could resolve them in favor of the nonmoving party. *Id.*

### IV. DISCUSSION

The SEC asserts several claims for violations of the Securities Act and Exchange Act. The SEC moves for summary judgment that Defendants are liable on all claims, and indicates that if its Motion is granted, it will seek leave to submit briefing and evidence in support of disgorgement and civil penalties.

The bulk of the SEC's claims are asserted against TKO Farms, Agravitae, and Owen. However, TKO Farms, Agravitae, and Owen expressly do not oppose the SEC's Motion, conceding liability. (TKO Farms, Agravitae, and Owen's Notice of Non-Opposition, ECF No. 135.) Accordingly, the Court **GRANTS** the SEC's Motion as to its claims against TKO Farms, Agravitae, and Owen.

This leaves Aguilar, Erskine, and the Estate, who each oppose the SEC's Motion. The Court addresses the claims against them in turn.

#### A. Aguilar and Erskine

The SEC asserts two claims against Aguilar and Erskine: (1) violations of Section 5 of the Securities Act; and (2) violations of Section 15 of the Exchange Act. The Court addresses each claim in turn.

##### 1. *Section 5 of the Securities Act*

Section 5 of the Securities Act prohibits the direct sale, indirect sale, and offer to sell, securities without a registration statement. 15 U.S.C. §§ 77e(a), (c). When bringing a claim under Section 5, the SEC bears the initial burden to establish a prima facie violation by showing that: "(1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate commerce." *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013). "Once the SEC introduces evidence that a defendant has violated the registration provisions, the defendant then has the burden of proof in showing entitlement to an exemption." *Id.*

The SEC argues that it has set forth sufficient undisputed facts to establish prima facie violations by both Aguilar and Erskine, and that no exemptions apply. Aguilar and Erskine disagree, arguing that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00941-RGK-KES | Date | September 5, 2024 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. TKO Farms, Inc. et al.* | | |

there are genuine disputes of material fact as to both the prima facie and potential exemptions. The Court first considers the elements of the prima facie in turn.

        a.    *No Registration Statement*

The first element of the SEC's prima facie is the lack of a registration statement. *Id.* Here, there is no dispute that both TKO Farms and Agravitae's securities were not registered with the SEC. Thus, this element is met.

        b.    *Sale or Offer to Sell Securities*

The second element of the SEC's prima facie is that defendants directly or indirectly sold or offered to sell the unregistered security. *Id.* This is not "limited to the person or entity who ultimately passes title to the security." *Id.* Rather, it includes people who are "both a 'necessary participant' and 'substantial factor' in the sales transaction." *SEC v. Phan*, 500 F.3d 895, 906 (9th Cir. 2007)) (quoting *SEC v. Murphy*, 626 F.2d 633, 652 (9th Cir. 1980)). The necessary participant test is akin to "but for" causation, as it considers "whether, but for the defendant's participation, the sale transaction would not have taken place." *Murphy*, 626 F.2d at 651. The substantial factor test is akin to proximate causation, as it considers the substantiality and significance of the defendant's participation in the sales transaction. *Id.*

Here, Aguilar and Erskine do not credibly dispute that they sold or offered to sell the unregistered securities for TKO Farms and Agravitae.[2] Instead, they argue that there is a genuine dispute of material fact as to whether they were both necessary participants and substantial factors. According to Aguilar and Erskine, a jury could find that they were not substantial factors because they did not issue the securities, make any filings with the SEC, or consummate the final sale of the securities. The Court disagrees. As the Supreme Court has long recognized, "[t]he solicitation of a buyer is perhaps the most critical stage of the selling transaction." *Pinter v. Dahl*, 486 U.S. 622, 646 (1988). Accordingly, courts have consistently found salespeople liable under Section 5. *See, e.g., SEC v. LFS Funding Ltd. P'ship*, 2023 WL 6373859, at *5 (C.D. Cal. Aug. 25, 2023); *Schaffer Ram. Invs. LLC v. Sonnier*, 2016 WL 6917269, at *9 (C.D. Cal. July 5, 2016). Thus, this element is also met.

        c.    *Interstate Commerce*

The third and final element of the SEC's prima facie is that defendants made the sale or offer to sale through interstate commerce. *CMKM Diamonds*, 729 F.3d at 1255. Telephones and email are instrumentalities of interstate commerce. *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008);

---

[2] To be sure, in his Opposition, Aguilar appears to dispute selling or offering to sell any securities. (Aguilar's Opp'n at 7, ECF No. 134.) This dispute is not credible, however, as Aguilar admitted during his deposition that he sold securities on at least one occasion. (Flake Decl., Ex. 34 at 63:6–11, 67:11–15.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00941-RGK-KES | Date | September 5, 2024 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. TKO Farms, Inc. et al.* | | |

*United States v. Sutcliffe*, 505 F.3d 944, 953 (9th Cir. 2007). Here, there is no dispute that Aguilar and Erskine used telephones and email to make sales or offers to sell. Thus, this element is met.

Because there is no genuine dispute that the SEC establishes its prima facie, the burden shifts to Aguilar and Erskine to demonstrate that an exemption may apply.

    d.    *Exemptions*

Section 4(2) of the Securities Acts sets forth several types of transactions that are exempt from the Section 5's registration requirement. 15 U.S.C. § 77d. One exemption is for private offerings. *Id.* § 77d(a)(2). SEC Rule 506(c) elaborates on this exemption, explaining that an offering is private if the issuer of the offering takes "reasonable steps" to verify that all purchasers are "accredited investors."[3] 17 C.F.R. § 230.506(c). While the Rule does not explain what constitutes reasonable steps, it does set forth various "non-exclusive and non-mandatory" reasonable methods of verification. Except in cases where an issuer has previously verified that a purchaser is an accredited investor and has sold securities to that purchaser, these methods require the issuer to review documents establishing the purchaser's income and net worth, or obtain written confirmation that the purchaser qualifies as an accredited investor from a registered, licensed, or certified third party. *Id.* § 230.506(c)(2)(ii)(A)–(E).

Aguilar and Erskine argue that Rule 506(c) may apply because there is a genuine dispute of material fact as to whether they took reasonable steps to verify that all investors were accredited. Specifically, Aguilar and Erskine argue that their reliance on prospective investors' oral and written representations that they were accredited may have been reasonable. The Court disagrees. Though the methods of verification set forth in Rule 506(c) are non-exclusive and non-mandatory, they each rely on some form of independent verification, be it by the issuer or a trustworthy third party. None of the methods suggest that an investor's own representations would suffice. Indeed, multiple courts have concluded that "reliance on an investor's own representations is—by definition—not verification and is therefore insufficient as a matter of law." *SEC v. LFS Funding Ltd. P'ship*, 2023 WL 6373859, at *5 (C.D. Cal. Aug. 25, 2023); *see also SEC v. Johnson*, 2022 WL 423492, at *4 (C.D. Cal. Jan. 26, 2022) ("Whatever the minimum reasonable efforts are, the standard surely exceeds mere reliance on an investor's own representations.").

Aguilar and Erskine alternatively argue that it was not their responsibility to verify that the investors were accredited, as they assert that Owen instructed them to contact prospective investors that had already been identified as accredited. (Aguilar Decl. ¶ 6.) However, Aguilar and Erskine fail to provide any authority suggesting that their good faith or ignorance is a defense. As other circuits have held, "good faith is not relevant to whether there has been a primary violation of the registration

---

[3] Accredited investors are individuals or entities that have certain qualifications or certifications, or have sufficient assets, income, or net worth. 15 U.S.C. § 230.501.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00941-RGK-KES | Date | September 5, 2024 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. TKO Farms, Inc. et al.* | | |

requirements" under Section 5. *SEC v. Holschuh*, 694 F.2d 130, 137 n.10 (7th Cir. 1982); *see also, e.g., SEC v. Guild Films Co.*, 279 F.2d 485, 490 (2d Cir. 1960). Thus, this argument fails.

Because the undisputed facts demonstrate that Aguilar and Erskine violated Section 5, the Court **GRANTS** the SEC's Motion as to this claim against Aguilar and Erskine.

    2.    <u>Section 15 of the Exchange Act</u>

Section 15 of the Exchange Act prohibits unregistered brokers and dealers from "induc[ing] or attempt[ing] to induce the purchase or sale of any security." 15 U.S.C. § 78o(a)(1).

The SEC argues that the undisputed facts show that Aguilar and Erskine violated Section 15. Aguilar and Erskine disagree, arguing that there is a genuine dispute of material fact as to whether they acted as brokers, or alternatively, whether they were exempt from registration as brokers. The Court addresses each argument in turn.

    a.    *Broker*

A "broker" is "any person engaged in the business of effecting transactions in securities for the account of others." *Id.* § 78c(a)(4)(A). To determine whether a defendant acted as a broker, courts consider whether the defendant: "(1) is an employee of the issuer of the security; (2) received transaction-based income such as commissions rather than a salary; (3) sells or sold securities from other issuers; (4) was involved in negotiations between issuers and investors; (5) advertised for clients; (6) gave advice or made valuations regarding the investment; (7) was an active finder of investors; and (8) regularly participates in securities transactions." *SEC v. Hui Feng*, 935 F.3d 721, 731–32 (9th Cir. 2019) (citing *SEC v. Hansen*, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984)).

There is no rigid formula for how these factors are weighed. Rather, courts consider the "totality of the circumstances." *Id.* Accordingly, courts routinely grant summary judgment when some, but not all factors demonstrate that the defendant acted as a broker. *See, e.g., id.* (affirming grant of summary judgment despite undisputed evidence that the defendant was not an employee of the issuer); *SEC v. George*, 426 F.3d 786, 797 (6th Cir. 2005) (affirming grant of summary judgment based on undisputed evidence that the defendant found and regularly communicated with prospective investors); *LFS Funding Ltd. P'ship*, 2023 WL 6373859, at *6 (affirming grant of summary judgment based on undisputed evidence that the defendant received commissions, provided investment advice, found prospective investors, and regularly participated in securities transactions).

Aguilar and Erskine argue that there is a genuine dispute of material fact as to whether they acted as brokers. The Court disagrees, as several undisputed factors demonstrate that Aguilar and Erskine acted as brokers.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00941-RGK-KES | Date | September 5, 2024 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. TKO Farms, Inc. et al.* | | |

First, both Aguilar and Erskine received transaction-based income such as commissions rather than a salary, characteristic of brokers. Though Aguilar notes that he received both a commission *and* a salary when he worked as an opener, he admits that he always received commissions, and that as a closer, he exclusively received commissions. (Williams Decl., Ex. 1 at 20:1–18; Flake Decl., Ex. 34 at 78:3–17.) And while Erskine argues that he received "discretionary bonuses" rather than commissions, he admits that Owen decided how the bonuses were calculated. (Erskine Decl. ¶¶ 15–16; Flake Decl., Ex. 35 at 72:4–20.) And Owen admits that Erskine was paid commissions based on his sales numbers. (Owen's Answer ¶ 54.) Erskine provides no evidence or argument to the contrary.

Second, both Aguilar and Erskine were involved in negotiations. It is undisputed that Aguilar set up and attended at least one meeting between Owen and a prospective investor. (Flake Decl., Ex. 34 at 97:14–98:21.) It is likewise undisputed that Erskine acted as a liaison between Owen and prospective investors. (Flake Decl., Ex. 36 at 123:24–124:13.)

Third, both Aguilar and Erskine provided investment advice and valuations. Aguilar admits that he recommended and advised prospective investors to invest in TKO Farms and Agraviate. (Flake Decl., Ex. 33 at 73:3–14.) Similarly, Erskine admits that he walked investors through financial projections and potential returns on investment. (Flake Decl., Ex. 35 at 122:14–124:13.)

Fourth, both Aguilar and Erskine were active "finders of investors." Both Aguilar and Erskine admit that they cold called prospective investors and convinced them to purchase securities. (Flake Decl., Ex. 3 at 37:18–20; Flake Decl., Ex. 36 at 123:24–124:13.)

In sum, four undisputed factors weigh strongly in favor of finding Aguilar and Erskine acted as brokers. Even assuming arguendo that the remaining factors weigh against a finding that Aguilar and Erskine acted as brokers, under the totality of the circumstances, the evidence demonstrates that they acted as brokers. *See, e.g., LFS Funding Ltd. P'ship*, 2023 WL 6373859, at *6. Thus, this argument fails.

    b. *Exemption from Registration*

Section 201(c) of the JOBS Act provides that a person that "provides ancillary services" with respect to "securities offered and sold in compliance with Rule 506" is not subject to broker-dealer registration if they "receive[] no compensation in connection with the purchase or sale of such security." 15 U.S.C. § 77d(c)(1)(C), (c)(2)(A).

Aguilar and Erskine argue that they are exempt from broker registration under Section 201(c). The Court disagrees. First, as explained above, the securities were not sold in compliance with Rule 506, as they did not take reasonable steps to verify prospective investors' accreditations. Second, as also explained above, Aguilar and Erskine were paid commissions, and thus compensated in connection with the sale of the securities. Thus, Section 201(c) does not apply.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00941-RGK-KES | Date | September 5, 2024 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. TKO Farms, Inc. et al.* | | |

Because the undisputed facts demonstrate that Aguilar and Erskine violated Section 15, the Court **GRANTS** the SEC's Motion as to this claim against them. The Court next addresses the SEC's claims against the Estate.

**B.     The Estate**

The SEC similarly asserts two claims against the Estate for: (1) violations of Section 5 of the Securities Act; and (2) violations of Section 15 of the Exchange Act. The Estate does not argue that any genuine disputes of material fact preclude summary judgment on these claims. Instead, the Estate argues that it lacks capacity to be sued, and accordingly brings its own Motion for Summary Judgment seeking judgment on the SEC's claims. The SEC disagrees, arguing that the Court should construe the claim as properly brought against the Estate's personal representative, Steven Penhollow, or alternatively, permit the SEC to amend its Complaint to name Steven Penhollow as a defendant.

Under Rule 17, a defendant's capacity to be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Under California law, the estate of a decedent is not a legal entity and "can neither sue nor be sued." *Pelayo v. City of Downey*, 570 F. Supp. 2d 1183, 1192 (C.D. Cal. 2008) (quoting *Est. of Bright v. W. Air Lines*, 104 Cal. App. 2d 827, 829 (1951)). Accordingly, courts routinely dismiss claims improperly brought against estates. *See id.*; *Sprint Sols., Inc. v. Thirty-One Echo, Inc.*, 2018 WL 1510210, at *4–5 (N.D. Cal. 2018).

However, when a complaint names an improper defendant, courts may consider the complaint to have named the proper defendant "if the allegations made in the body of the complaint make it plain that the party is intended as a defendant." *Barsten v. Dept. of Interior*, 896 F.2d 422, 423 (9th Cir. 1990) (quoting *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983)). As the Fourth Circuit once explained:

> A suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant . . . it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else.

*United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947).

Here, there is no dispute that the Estate lacks capacity to be sued. But there is also no dispute that the Estate's personal representative, Steven Penhollow, was the intended defendant. For instance, before the Complaint was filed, the SEC notified Steven Penhollow about its claims against the Estate. (Second Flake Decl., Ex. 2, ECF No. 131-5.) After the Complaint was filed, Steven Penhollow attended and participated in mediations. (Second Flake Decl. ¶ 9, ECF No. 131-3.) Steven Penhollow even indicated

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-cv-00941-RGK-KES | Date | September 5, 2024 |
| Title | *Securities and Exchange Commission v. TKO Farms, Inc. et al.* | | |

to a probate court that he was defending against the SEC's claims. (Second Flake Decl., Ex. 7 at 3, ECF No. 131-10 ("Petitioner prays for an Order of this Court that[] [t]he administration of the estate be continued for one year so Petitioner can continue to defend the estate in the SEC action.").) In this manner, Steven Penhollow was not only aware that he was the intended defendant, but he also fully participated in the action.

Nonetheless, the Estate argues that the Court should reject the SEC's arguments because most of these cases involving misnomers were brought by unsophisticated pro se litigants. While pro se litigants are held to a more relaxed standard, the SEC, a federal agency with tremendous resources, should be held to a higher standard. The Estate's argument is not without merit. However, this argument carries little weight when measured against the Estate's conduct.

This litigation began more than two years ago. The Estate had numerous opportunities to argue that it lacked capacity. Yet it declined to do so. The Estate did not raise this issue in its Motion to Dismiss or its Answer.[4] (*See* the Estate's Mot. to Dismiss, ECF No. 22; the Estate's Answer, ECF No. 67.) Had the Estate raised the issue earlier, the SEC could have easily amended the Complaint. Instead, the Estate waited until the eleventh hour, when amendment would be the most difficult and disruptive, so it could seek the most extreme relief: summary judgment and dismissal with prejudice, with no opportunity for the SEC to bring the claims against the correct defendant. In short, the Estate is correct that the SEC made a mistake that the Court is loath to ignore. However, that mistake is nowhere near as egregious as the Estate's blatant attempt at gamesmanship. The Court will not reward the Estate's behavior.

For these reasons, the Court **DENIES** the Estate's Motion for Summary Judgment. The SEC's claims against the Estate may proceed as if brought against Steven Penhollow as personal representative of the Estate. Because no amendment is necessary for these claims to proceed, the Court **DENIES** the SEC's Motion for Leave to Amend **as moot**. Accordingly, the Court treats all filings by the Estate as filed by Steven Penhollow, and any claims against the Estate as against him. And because Steven Penhollow, despite his full participation in this action through the Estate, does not argue that any genuine disputes of material facts preclude summary judgment, the Court **GRANTS** the SEC's Motion as to its claims against him.

### C.    Disgorgement and Civil Penalties

As noted at the outset, the SEC only moves for summary judgment as to Defendants' liability, not remedies. Instead, the SEC explains that it will "separately seek leave from the Court to offer

---

[4] To be sure, the Estate argues that it was not obligated to raise this issue, as lack of capacity is not a waivable defense. However, the Court is not concerned with whether the Estate can raise lack of capacity at this stage, but whether the claims erroneously brought against the Estate can proceed against the proper defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-cv-00941-RGK-KES | Date | September 5, 2024 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. TKO Farms, Inc. et al.* | | |

evidence" regarding disgorgement and civil penalties. (SEC's Mot. Summ. J. at 18.) It appears that the SEC intends to have the Court determine the appropriate amount of disgorgement and civil penalties, much as it has determined liability. However, it is unclear whether this procedure is an appropriate substitute for the jury trial currently scheduled for November 12, 2024. Accordingly, the Court **ORDERS** the parties to **SHOW CAUSE** in writing whether disgorgement and civil penalties should be decided by the Court rather than a jury. The parties' responses shall be no more than **ten (10)** pages in length and filed within **seven (7)** days of this Order's issuance.

## V.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** the SEC's Motion for Summary Judgment [122], **DENIES** the Estate's Motion for Summary Judgment [126], and **DENIES** the SEC's Motion for Leave to Amend **as moot** [131]. The Court further **ORDERS** the parties to **SHOW CAUSE** in writing whether disgorgement and civil penalties should be decided by the Court rather than a jury. The parties' responses shall be no more than **ten (10)** pages in length and filed within **seven (7)** days of this Order's issuance.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | | JRE/sf |